**In the Matter of James Russell FAUST and Catherine Mary Faust.**

**In re Alan Laverne SAATHOFF and Diane Mae Saathoff.**

**In re Clestus Parmalee VAUGHAN, Jr., and Euvondia Lynn Vaughan.**

**In re Dennis E. ZUREK and Elaine K. Zurek, Debtors.**

**Bankruptcy Nos. BK80–114, BK80–2402, BK80–2739 and BK80–2013.**

United States Bankruptcy Court, D. Nebraska.

April 29, 1981.

Jeanette H. Rasmussen, John D. Rouse, Lincoln, Neb., for Fausts.

Clay B. Statmore, Lincoln, Neb., for Saathoffs and Vaughans.

Michael A. Nelsen, Omaha, Neb., for Zureks.

Kenneth E. Shreves, Omaha, Neb., Trustee.

## MEMORANDUM

DAVID L. CRAWFORD, Bankruptcy Judge.

The issue before this Court is whether Chapter 13 plans proposing no payment to unsecured creditors meet the § 1325(a)(3) requirement of good faith where the debtors desire to pay secured creditors under their plans.

Recently, the Eighth Circuit ruled on the validity of a no-payment Chapter 13 plan. *In re Terry*, 630 F.2d 634 (8th Cir. 1980). In that case, Stuart and Sheila Terry possessed only exempt property and proposed no payment to any creditor, all of whom were unsecured. Although the Terry had a regular income, their monthly expenses exceeded that amount by eight dollars. The Eighth Circuit first determined the Terrys to be ineligible for Chapter 13 relief since their income did not enable them to make payments under a Chapter 13 plan. See 11 U.S.C. § 101(24). Next the Eighth Circuit considered the general question of whether a zero payment plan where filed by an eligible debtor, could meet the good faith requirement of § 1325(a)(3). Consistent with its analysis that the ability to make some payment is required by the Code, the Court stated that a Chapter 13 plan to pay nothing could not be in good faith and further that it would constitute an abuse of the liberal § 1328 discharge provisions for debtors making all payments proposed in their plan. Thus, *Terry* clearly indicates that a Chapter 13 plan must provide for some payments to some creditors in order to be considered filed in good faith. The case does not indicate what level of payment is required or whether plans may provide for payment solely to secured creditors. Both of these questions must be addressed in the cases before me now.

In the four cases under consideration, each proposes payment to secured or priority creditors but zero payment to general unsecured creditors. All debtors are individuals having a regular income. Chapter 7 proceedings in each of these cases would result in nonpayment of unsecured creditors. The facts are as follows:

Alan and Diane SAATHOFF propose a 35-month plan under which they would pay their two secured creditors and the trustee 100% of their excess income after expenses. The debtors' net income is $644 per month with listed monthly expenses of $538, leaving $106 to be devoted to making payments under the plan.

Dennis and Elaine ZUREK intend to pay their first and second mortgagees and one other secured creditor outside their Chapter 13 plan. The only claim they propose to pay within the plan is a priority tax claim in the amount of $2288.65. They propose no payment to unsecured nonpriority creditors. The couple's net income per month is $1564; after expenses, they net $95 per month all of which will be used to pay the federal tax claim, administration expenses and attorney fees.

Clestus and Euvondia VAUGHAN have net income per month of $800. Of their $330 excess income after expenses, they propose payments of $281 per month to secured creditors and no payments to unsecured creditors. The amount of the secured claims indicates the plan will require three years or longer to complete.

James and Catherine FAUST have a net income of $1032 per month and monthly expenses of $810. From the remaining $221, they propose to pay their sole secured creditor and their attorney $44 per month. They propose no payment to unsecured creditors. I note that a major part of their income derives from disability payments and that most of the unsecured debt is medical bills. The reason for filing a Chapter 13 instead of a Chapter 7 appears to be to cure a default in a residential land contract.

I find that the amount of payment which must be made under a Chapter 13 plan in order to meet the requirements of *Terry* should be determined on a case-by-case basis. Some courts have determined that plans will not be confirmed unless a minimum percentage of all debt is to be paid. E. g., *In re Paul Burrell*, 2 B.R. 650, 5 Bcy.Ct.Dec. 1321 (Bkrtcy.N.D.Cal.1980). Such an approach seems to me to unsupported by any statutory requirement and to judicially overrule the flexible standards delineated in § 1325 of the Code. Accord: *In re Garcia*, 6 B.R. 35, 6 Bcy.Ct.Dec. 1212 (Bkrtcy.D.Kan.1980). Accordingly, I decline to follow that line of cases even though such a system has the virtue of simplicity for debtors, attorneys and courts. Generally, I hold that confirmation of a Chapter 13 plan will not be denied when debtors are making a reasonable effort to make reasonable payments to their creditors. What is reasonable will depend on the circumstances in each case. *In re Dill*, 6 B.R. 396, 6 Bcy.Ct.Dec. (Bkrtcy.E.D.Tenn.1980); see also *In re Iacovanni*, 2 B.R. 256, 5 Bcy.Ct.Dec. 1270, 1277 (Bkrtcy.D.Utah 1980).

Next it is necessary to determine whether debtors who wish to make reasonable payments under a Chapter 13 plan must also provide for payments to unsecured creditors. As discussed in *In re Cloutier*, 3 B.R. 584, 6 Bcy.Ct.Dec. 196 (Bkrtcy.D.Col.1980), there can be a number of valid reasons for filing a Chapter 13 plan, of which payment to unsecured creditors is only one. In cases where unsecured creditors would receive no payment under a Chapter 7, denial of confirmation of a Chapter 13 plan filed for a legitimate purpose on grounds of no payment to unsecured creditors would benefit on grounds of no payment to unsecured creditors would benefit no creditor and would often be calamitous for debtors. Such a punitive construction of the good faith requirement is contrary to the purpose of providing debtors with a fresh start and is rejected. *In re Johnson*, 6 B.R. 34, 6 Bcy.Ct.Dec. 579 (Bkrtcy.N.D.Ill.1980); *In re Bellgraph*, 4 B.R. 421, 6 Bcy.Ct.Dec. 480 (Bkrtcy.W.D.N.Y.1980). Thus, plans which are filed for a legitimate purpose and are not an abuse of the provisions of Chapter 13 should be confirmed even where there is no provision for payment to unsecured creditors. *In re Stollenwerck*, 8 B.R. 297, 7 Bcy.Ct.Dec. 199 (Bkrtcy.M.D.Ala.1981).

Under this standard, the plans of the Saathoffs, the Zureks, and the Vaughans should be confirmed. No abuse has been shown, and the debtors are devoting all or most of their excess income after reasonable expenses to the payment of creditors. While the Fausts are clearly attempting to use the provisions of Chapter 13 for a legitimate purpose, their plan cannot be confirmed. Where only 18% of their excess income is to be used to pay one creditor, I cannot find that there is the reasonable effort to make reasonable payments which *Terry* requires.

A separate order is entered in accordance with the foregoing.