NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                              )   BAP No.   CC-15-1100-KuKiTa
                                    )
MARGARET LUCILLE CARSWELL,          )   Bk. No.   14-12354
                                    )
                    Debtor.         )   Adv. No.  15-01003
_____)
                                    )
MARGARET LUCILLE CARSWELL,          )
                                    )
                    Appellant,      )
                                    )
v.                                  )   **MEMORANDUM**[*]
                                    )
ELIZABETH F. ROJAS, Chapter 13      )
Trustee; THE WOLF FIRM; SELECT      )
PORTFOLIO SERVICING, INC.; U.S.     )
BANK NA, successor trustee to       )
Bank of America, NA, successor      )
in interest to LaSalle Bank NA,     )
as trustee, on behalf of the        )
holders of the WaMu Mortgage        )
Pass-Through Certificates,          )
Series 2007-OA1,                    )
                                    )
                    Appellees.      )
_____)

Argued and Submitted on November 19, 2015
at Pasadena, California

Filed – December 11, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter H. Carroll, Bankruptcy Judge, Presiding

_____

Appearances:    Appellant Margaret Lucille Carswell argued pro se;
                Jonathan S. Lieberman of Locke Lord LLP argued for

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

appellees Select Portfolio Servicing Inc. and U.S. Bank NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA1.

Before: KURTZ, KIRSCHER and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1] debtor Margaret Lucille Carswell appeals from an order dismissing her chapter 13 bankruptcy case. According to Carswell, the bankruptcy court erred as a matter of law, violated her rights as a disabled person, and violated her due process rights, when it refused to continue the plan confirmation hearing at which the court ruled that her case should be dismissed. However, the admissions that Carswell made in her amended chapter 13 plan and in her opening appeal brief establish that Carswell is ineligible to be a chapter 13 debtor, so there is no way that Carswell could have been harmed by the bankruptcy court's case dismissal order or its denial of her request for a continuance of the plan confirmation hearing.

We are sympathetic to the serious health conditions Carswell alleges that she has endured, and we also are sympathetic regarding her desire to have the ability to appear in court (either in person or telephonically) and present her objections to the dismissal of her bankruptcy case. Nonetheless, in light of her admitted ineligibility to be a chapter 13 debtor, nothing

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

she could have said or done would have changed the outcome regarding her chapter 13 bankruptcy case. On this basis, we AFFIRM the bankruptcy court's case dismissal order.

Carswell also appeals the bankruptcy court's docket entry closing her adversary proceeding, which docket entry was made on the same day her bankruptcy case was dismissed. We are not persuaded that the docket entry should be treated as a final judgment disposing of the adversary proceeding. In the absence of a final judgment, we lack appellate jurisdiction. Therefore, we REMAND the portion of this appeal arising from this docket entry. On remand, the bankruptcy court will need to enter a final judgment, which should be supported by appropriate findings.

**FACTS**

Carswell filed her Chapter 13 bankruptcy petition in October 2014. The filing was, in essence, a face-sheet filing as it was not accompanied by any schedules or by any statement of financial affairs.[2]

When Carswell filed her schedules and statement of financial affairs roughly fourteen days later, she still did not list on them any real property, any secured debt, any priority unsecured debt or any specific non-priority unsecured debts. As for income, Carswell claimed that her only source of income was $600 per month from an income source nebulously referred to as

---

[2]We can and do take judicial notice of the bankruptcy court's case and adversary proceeding dockets and the imaged documents attached thereto. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957–58 (9th Cir. 1989).

"voluntary debt repayment." As for expenses, Carswell claimed that she expended $400 per month for food and housekeeping supplies, $150 per month for transportation, and $226 per year for vehicle insurance. According to her Schedule J listing of expenses, Carswell had no expenses associated with home rental or home ownership.

Carswell's initial chapter 13 plan, which she filed on the same day she filed her schedules, does not propose any repayment plan to any creditors and does not list any classes of creditors to be provided for under her plan. In most of the spaces that needed to be filled in on the form chapter 13 plan, Carswell handwrote either "0" or "TBD" or "unknown". She left many other spaces on the form blank.

In February 2015, the chapter 13 trustee Elizabeth Rojas filed an objection to confirmation of Carswell's plan. Rojas' plan objection raised a host of problems and concerns associated with the plan, including but not limited to the following: (1) Carswell's failure to disclose all of her assets and her failure to disclose any creditors; (2) Carswell's failure to serve her plan; (3) Carswell's failure to provide to Rojas copies of her two most recent tax returns – her tax returns for 2013 and 2014; and (4) Carswell's failure to provide for all of her creditors in her plan.

Also in February 2015, another plan objection was filed by U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA1. U.S. Bank asserted that it was the holder of a

4

promissory note indorsed in blank and executed by Carswell in December 2006 in the principal amount of $2.5 million. U.S. Bank further asserted that it is the successor beneficiary under a deed of trust securing the $2.5 million loan. U.S. Bank attached to its plan objection copies of the note, the deed of trust, an assignment of deed of trust and other documentation tending to show U.S. Bank's interest in Carswell's 2006 note and deed of trust.

The plan confirmation hearing was set for March 19, 2015. Several days before the hearing, Carswell filed an amended chapter 13 plan. In the amended plan, most of the spaces for entering plan information remained blank. However, at the end of her amended plan, Carswell attached a three page narrative statement, which gives at least some insight into some aspects of Carswell's finances.

In the narrative, Carswell admits that in 2006 she owned a residence located on Sea Ranch Drive in Santa Barbara, California and that, at the end of 2006, she refinanced the residence. She also does not dispute that, in conjunction with this refinancing, she executed a note and deed of trust that identified Washington Mutual Bank as the lender. Carswell claims that in 2009 she unilaterally "rescinded" the 2006 refinancing loan, but there is no indication that she tendered repayment of the 2006 loan proceeds. According to Carswell, she has not made any payments on the 2006 loan since 2009.

Carswell further claims in the narrative that, in 2013, she gifted her residence to Earth First Construction. According to Carswell, she is Earth First Construction's president. In

addition, in her statement of financial affairs, Carswell indicated that Earth First Construction is her wholly-owned non-profit business.

The narrative proceeds to describe a rather unique living arrangement, which at least partly explains why Carswell contends that she does not have any home-related expenses, why she does not have any creditors, and why she does not own the residence but continues to live in the residence:

> Along with my housemate, who is employed, as I am, by the non profit corporation Earth First Construction, we decided to adopt and begin to manifest the vision of community collaboration rendering money unnecessary. In 2011 we made an application with the County to be exempted from property taxes, due to the educational and spiritual purposes of the non profit. The county eventually responded that we would need to transfer the property title to the corporation.
>
> A resolution was passed in 2013, declaring:
>
>> That the Board of Directors of Earth First Construction hereby authorizes the corporation to acquire and manage property in its own right, specifically, the property located at . . . Sea Ranch Drive in Santa Barbara.
>>
>> That the corporation may offer living accommodation and benefits to the officers of Earth First Construction in lieu of salaries.
>
> The property was gifted to EFC shortly thereafter. As President of EFC I have a live-work agreement with the corporation and am not paid a salary, in accordance with the corporation Objectives. . . . I have not had personal income and have not filed income taxes for decades. My housemate, who owes me money, pays the utilities and a $600/month stipend as voluntary debt repayment.

Amended Chapter 13 Plan (March 13, 2015) at pp. 9-10.

On March 17, 2015, two days before the confirmation hearing, Carswell filed a motion to continue the confirmation hearing or, in the alternative, to appear telephonically. According to

6

Carswell, she has several serious health conditions that have left her home-bound, so she needed either a continuance of the hearing for six months or, at a minimum, permission to appear by telephone.[3]

On the eve of the hearing, the bankruptcy court entered a one sentence order denying Carswell's motion. The order does not give any indication of the reason for the bankruptcy court's denial.

On March 19, 2015, the bankruptcy court held the confirmation hearing as scheduled, but Carswell did not appear. At the hearing, Rojas pointed out a number of the significant problems arising in Carswell's case, including: (1) the amount of Carswell's debt, which appeared to exceed the chapter 13 debt limits set forth in section 109(e); (2) Carswell's failure to appear at the continued § 341(a) meeting of creditors; (3) Carswell's failure to fill in most of the information required for her plan and for her amended plan; (4) Carswell's failure to provide any information concerning her classes of creditors or how she proposed to treat them under her plan; (5) Carswell's failure to provide the trustee with mortgage declarations; and (6) Carswell's failure to provide the trustee with any tax returns. The bankruptcy court sustained the

---

[3]Also on March 17, 2015, the chapter 13 trustee Rojas filed a new plan objection, apparently in response to Carswell's amended plan. The new plan objection references most of the same problems and concerns that Rojas had noted in her initial plan objection. The new plan objection additionally reiterated that failure of Carswell to appear and/or her failure to comply with chapter 13 case requirements could result in dismissal or conversion of Carswell's case.

trustee's plan objection and ordered the case dismissed without prejudice for the reasons stated by the trustee.

The bankruptcy court entered its case dismissal order on March 19, 2015, and Carswell timely filed a notice of appeal on March 31, 2015.

Meanwhile, Carswell also had commenced an adversary proceeding in essence seeking to invalidate U.S. Bank's asserted lien on the residence she gifted to Earth First Construction. At the time of the dismissal of Carswell's bankruptcy case, U.S. Bank and some of the other named defendants had pending Civil Rule 12(b)(6) motions to dismiss. However, on the same day the bankruptcy court dismissed Carswell's bankruptcy case, it made the following entry on the adversary proceeding docket:

> Adversary Case 9:15-ap-1003 Closed. The complaint filed in the above case has been disposed of and is no longer pending due to the dismissal of the complaint or main case, the entry of a judgment or the transfer of the adversary proceeding to another division or district. Since it appears that no further matters are pending that require this adversary proceeding remain open, it is ordered that this adversary proceeding is closed.

Adv. Dkt. No. 15-01003 (March 19, 2015) at Item No. 16. The bankruptcy court never entered anything along the lines of a final written order formally disposing of the adversary proceeding. When Carswell subsequently filed a status report, responses to the motions to dismiss, and a request for a continuance, the bankruptcy court made additional docket entries explaining that the documents were filed in a closed adversary proceeding and no further action would be taken.

On April 7, 2015, Carswell filed an amended notice of appeal, which she claims added the dismissal of her adversary

8

proceeding to her appeal from the dismissal of her bankruptcy case.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (K) and (L). Subject to the issue regarding the scope of this appeal set forth below, we have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Do we have jurisdiction to consider the dismissal of Carswell's adversary proceeding?

2. Did the bankruptcy court commit reversible error when it dismissed Carswell's bankruptcy case or when it denied Carswell's motion to continue the confirmation hearing?

**STANDARDS OF REVIEW**

The finality of the bankruptcy court's docket entry closing Carswell's adversary proceeding is a jurisdictional issue that we have an independent duty to raise, and which we review de novo. Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 230 (9th Cir. BAP 2007), aff'd in part, dismissed in part, 551 F.3d 1092 (9th Cir. 2008).

Both the bankruptcy court's denial of a motion to continue and its dismissal of a chapter 13 bankruptcy case are reviewed for an abuse of discretion. Ellsworth v. Lifescape Medical Assocs., P.C. (In re Ellsworth), 455 B.R. 904, 914 (9th Cir. BAP 2011); Khachikyan v. Hahn (In re Khachikyan), 335 B.R. 121, 125 (9th Cir. BAP 2005).

The bankruptcy court abused its discretion if it applied an incorrect legal standard or if its factual findings were clearly

9

erroneous. United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

We can affirm the bankruptcy court's rulings on any grounds supported by the record. Nordeen v. Bank of Am., N.A. (In re Nordeen), 495 B.R. 468, 476 (9th Cir. BAP 2013).

**DISCUSSION**

**A.  Scope of Appeal – Attempted Appeal From Adversary Proceeding Closure**

Carswell seeks appellate review not only of the dismissal of her bankruptcy case, but also of the closing of her adversary proceeding. U.S. Bank claims that Carswell's appeal from the docket entry closing her adversary proceeding was untimely because Carswell did not appeal the adversary proceeding closure until April 7, 2015, which is more than fourteen days after the subject docket entry. See generally Rule 8002(a)(1).

We disagree with U.S. Bank's position. The March 19, 2015 docket entry closing the adversary proceeding had virtually none of the attributes of a final order or judgment, so it never triggered the time period for filing a notice of appeal. See Ingram v. ACandS, Inc., 977 F.2d 1332, 1338-39 (9th Cir. 1992).

Ingram suggests that the absence of entry of a formal separate judgment or order might be waived if none of the parties object and insist on entry of a separate judgment. Id. at 1339 n.7. However, under the circumstances presented here, we decline to read the adversary proceeding closure entry as the equivalent of a dispositive ruling ending the adversary proceeding. There is no dispositive language in the docket entry to that effect.

10

To the contrary, the docket entry only states that the adversary proceeding will be closed. The closure of a bankruptcy case or adversary proceeding is a markedly different event than a case or adversary proceeding dismissal. See generally Menk v. Lapaglia (In re Menk), 241 B.R. 896, 911-12 (9th Cir. BAP 1999) (explaining difference between case dismissal orders and case closure orders).

Moreover, we decline to read the adversary proceeding closure entry as a dismissal order for an additional reason. Before a bankruptcy court dismisses a "related-to" adversary proceeding based on the dismissal of the underlying bankruptcy case, the bankruptcy court is supposed to exercise its discretion by considering the factors of judicial economy, fairness, convenience and comity. Linkway Inv. Co, Inc. v. Olsen (In re Casamont Investors, Ltd.), 196 B.R. 517, 522 (9th Cir. BAP 1996) (citing Carraher v. Morgan Elecs., Inc. (In re Carraher), 971 F.2d 327, 328 (9th Cir. 1992)). The adversary proceeding docket suggests that the closure of the adversary proceeding here was a reflexive action automatically taken upon dismissal of the bankruptcy case, and there is nothing in the record to suggest that the bankruptcy court considered the In re Carraher factors before closing the adversary proceeding.

Accordingly, we will REMAND this portion of the appeal so that the bankruptcy court can enter a final judgment in the adversary proceeding, if appropriate. On remand, the bankruptcy court should enter findings of fact addressing the In re Carraher factors in conjunction with its disposition of the adversary proceeding. Below, we will limit our review to the dismissal of

11

Carswell's bankruptcy case and the denial of her continuance motion.

**B.    Substantive Review of Issues on Appeal**

On appeal, Carswell claims that the bankruptcy court erred as a matter of law by denying, without explanation, her motion to continue or in the alternative to appear by telephone.  Carswell further claims that the court violated her rights as a disabled person and violated her due process rights because the court deprived her of a reasonable opportunity to appear and be heard.[4] According to Carswell, if she had been given a reasonable opportunity to appear and be heard, she would have been able to demonstrate to the bankruptcy court that all of Rojas' concerns about her chapter 13 case and her chapter 13 plan were unfounded. Indeed, Carswell maintains that her amended chapter 13 plan and the narrative attached at the end of that plan contain answers to all of Rojas' concerns.

Carswell is mistaken.  Carswell's admissions in her amended chapter 13 plan narrative statement, when read in conjunction with U.S. Bank's plan objection, establish that U.S. Bank has a claim against Carswell in an amount exceeding $2.5 million. Moreover, in her opening appeal brief at pages 8 and 9, Carswell reiterated her admission regarding the existence of this debt.

The chapter 13 eligibility provisions of the Bankruptcy Code

[4]Carswell further claims that the bankruptcy court's treatment of her also violated the equal protection element of the due process clause.  But that claim is based on the same facts as her due process claim, and we previously have indicated that equal protection issues of this type typically are subsumed within our due process analysis.  See Jeter v. U.S. Trustee (In re Adams), 214 B.R. 212, 217 (9th Cir. BAP 1997).

12

make it abundantly clear that Carswell's debt to U.S. Bank exceeds the statutory debt limits.  The statute specifies as follows:

> (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525 . . . may be a debtor under chapter 13 of this title.

11 U.S.C. § 109 (West).

Carswell's assertion that she gifted her residence to Earth First Construction in 2013 might mean that the residence was not estate property, which in turn might mean that U.S. Bank's claim was unsecured rather than secured for bankruptcy purposes.  See 11 U.S.C. § 506(a)(1) (defining a secured claim as the claim of a creditor secured by a lien on property in which the bankruptcy estate has an interest).  Regardless of whether U.S. Bank's claim is secured or unsecured, however, the debt limits are clearly exceeded.

U.S. Bank's claim is neither contingent nor unliquidated.  A claim in bankruptcy is considered contingent when the debtor only will be liable for it upon the occurrence of an extrinsic event. Duplessis v. Valenti (In re Valenti), 310 B.R. 138, 148 (9th Cir. BAP 2004).  And a claim in bankruptcy is considered unliquidated only if the amount of the debt is not readily ascertainable. Slack v. Wilshire Ins. Co. (In re Slack), 187 F.3d 1070, 1073–75 (9th Cir. 1999).  U.S. Bank's claim satisfies neither definition. The liability is based on an unconditional promissory note, and the amount owed on the note is readily ascertainable from the terms of the note and Carswell's brief payment history.

13

We understand and acknowledge that Carswell posits several reasons why the claim should be treated as unsecured or not allowed at all. Carswell contends that she rescinded the loan transaction, that collection of the debt was barred by the statute of limitations and that the attorney who appeared in the bankruptcy court on behalf of U.S. Bank was not authorized by U.S. Bank to appear on the bank's behalf. At best, these arguments indicate that the claim is disputed, but disputed claims typically are counted for purposes of determining chapter 13 eligibility. "So long as a debt is subject to ready determination and precision in computation of the amount due, then it is considered liquidated and included for eligibility purposes under § 109(e), **regardless of any dispute**." See Nicholes v. Johnny Appleseed of Wash. (In re Nicholes), 184 B.R. 82, 91 (9th Cir. BAP 1995) (emphasis added), quoted with approval in, In re Slack, 187 F.3d at 1075.

In addition to exceeding the statutory debt limits, there is another fatal eligibility problem apparent in Carswell's bankruptcy case. Carswell admitted in her amended chapter 13 plan narrative statement that she has no regular income with which she could fund a plan. According to Carswell, she only receives $600 per month from her housemate as a voluntary debt repayment. This lack of regular income also makes her ineligible to be a chapter 13 debtor. 11 U.S.C. § 109(e); see also Pellegrino v. Boyajian (In re Pellegrino), 423 B.R. 586, 590-91 (1st Cir. BAP 2010); In re Gavia, 24 B.R. 573, 575 (9th Cir. BAP 1982).

In light of these two fatal eligibility defects apparent in

14

Carswell's chapter 13 case, Carswell could not possibly have suffered any harm when the bankruptcy court denied her motion to continue or in the alternative to appear by telephone. Consequently, even if we were to assume that the bankruptcy court erred when it denied Carswell's motion, any such error was harmless error, and we must ignore harmless error. See Van Zandt v. Mbunda (In re Mbunda), 484 B.R. 344, 355 (9th Cir. BAP 2012), aff'd, 2015 WL 1619469 (9th Cir. Apr. 13, 2015). Similarly, alleged due process violations fail in the absence of prejudice. Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 776 (9th Cir. 2008).

In closing, we reiterate our sympathy regarding the serious health conditions Carswell alleges that she has endured, and we also are sympathetic regarding her desire to appear in court (either in person or telephonically) and present her objections to the dismissal of her bankruptcy case. Even so, the fatal eligibility defects apparent in Carswell's bankruptcy case convince us that the bankruptcy court did not commit reversible error when it dismissed her case.[5]

## CONCLUSION

For the reasons set forth above, we must REMAND the portion of this appeal arising from the bankruptcy court's docket entry

---

[5]Carswell submitted to this Panel a written request seeking to disqualify counsel for the appellees (Locke Lord LLP) from appearing in this appeal. According to Carswell, Locke Lord LLP is not a party to this appeal, nor did that firm represent any party in the underlying bankruptcy case. Carswell's request is hereby ORDERED DENIED. Carswell has not cited to any law prohibiting appellees from associating in new counsel to represent them on appeal, nor are we aware of any such law.

15

closing Carswell's adversary proceeding. On remand, the bankruptcy court will need to enter a final judgment, if appropriate, which should be supported by all necessary findings.

As for the bankruptcy court's dismissal of Carswell's bankruptcy case, we AFFIRM.